ELLIS *v*. STATE PRINTING BOARD.

Opinion delivered January 7, 1929.

*Hays, Priddy & Rorex* and *Ed I. McKinley, Jr.*, for appellant.

*H. W. Applegate,* Attorney General, *Hal L. Norwood,* Assistant, and *Daily & Woods,* for appellee.

McHANEY, J. Appellants, Tod Ellis and J. L. Boyd, operate as partners the business known as the Russellville Printing Company, and on December 31, 1927, brought this action against the appellees, who were the then Governor, State Auditor, Secretary of State and State Treasurer, composing the State Printing Board, and the Calvert-McBride Printing Company, to enjoin them from carrying out a contract for State printing let to Calvert-McBride Printing Company. Appellants and the Calvert-McBride Printing Company were competitive bidders for a certain contract known as miscellaneous contract No. 18. Each bid was submitted to the Secretary of State on identical forms, as follows:

| | | |
|---|---|---|
| Plain composition, per 1,000 ems | $ .30 | $ .30 |
| Tabular composition, per 1,000 ems | .40 | .50 |
| Book paper, per pound, M. F. | .08½ | .08 |
| Book paper, per pound, S. S. C. | .11 | .09 |
| Book paper, per pound, enamel | .13 | .15 |
| Cover paper, S. S. C., per pound | .03 | .05 |
| Manila tag board, per pound | .01 | .02 |
| Press work, per 100 sheets, first form | .30 | .10 |
| Press work, per 100 additional sheets | .12 | .09 |

Folding, per 100 signatures or less............ .10    .09
Gathering, per 100 signatures or less.......... .04    .05
Stitching, per 100 pamphlets..................... .04    .05
Pasting, covering and trimming per 100...... .04    .05
Binding in full cloth, each, not larger
    than 6x9.......................................... .01    .01
Binding in full cloth, each, not larger
    than 8x11........................................ .01    .02
Binding in full cloth, each, larger than
    above ............................................ .01    .02

The first column of figures above represents the bid of the Russellville Printing Company, and the second column that of Calvert-McBride on the different items entering into the production of the pamphlets covered by contract No. 18. The principal difference in these bids is shown in the item for "press work, per 100 sheets, first form," the Russellville Printing Company's bid being 30c and Calvert-McBride's being 10c for the same work. However, it is contended by appellants that this item in their bid was based upon sheets containing sixteen pages, and that of appellee, Calvert-McBride, was based upon the assumption that a sheet contained four pages, and that while on the face of the bids appellant's bid appears to be 300 per cent higher, in reality it was lower, in that it involved four times the amount of work, which would make their bid 7½c, and appellee's 10c. On this account it is claimed that it submitted the lowest bid, and that it should have been awarded the contract for this work. The bill for an injunction was submitted to the chancery court upon the evidence of both parties, which resulted in a decree dismissing appellant's complaint for want of equity.

The statute does not in terms define the meaning of a sheet of paper as used in the above bid. It does define the term "signatures" as used in the bid. The word "signatures" among printers has a well defined meaning in accordance with a provision of the statute, which is § 9218, C. & M. Digest, and is as follows: "In all sections of this chapter where the word 'signature'

occurs, it shall be construed to mean a 'sheet' containing sixteen pages.'' It appears from the testimony that the standard sheet among printers and printing establishments is a sheet of paper, which, when folded, makes sixteen pages without waste. It may be, probably is, that a sheet of paper means such a size sheet as when folded will make sixteen pages. The above definition of ''signature'' seems to indicate such a meaning. But, regardless of whether a sheet contains sixteen pages or less, it appears from the evidence that these bids were submitted in July, and that shortly thereafter the Secretary of State called in to conference the Governor, Auditor and the State Treasurer, whose duty it is to approve all contracts that may be let for State printing, who held hearings on this particular contract, and considered the matter thoroughly from every standpoint based on the contentions of appellant and that of appellee, until the latter part of December, when the contracts were finally approved. It does not appear, in fact there is no allegation in the complaint, that there was any fraud, collusion or unfairness on the part of those whose duty it is to let and approve these contracts. The statute vests them with this power, and necessarily gives them some discretion in determining who the lowest bidder is. True, the statute requires the board to let the contract to the lowest bidder, but in contracts of this kind, where the items entering into the bid are numerous, complicated, involved, and require technical knowledge to a determination of the question as to which bid is the lowest, the judgment of those upon whom the duty rests of letting the contract to the lowest bidder should be and is final in the absence of fraud, collusion, favoritism or demonstrable mistake. It appears from the evidence that the Secretary of State was assisted in figuring these bids by the State Printing Clerk, who at least is supposed to possess technical knowledge in the matter of figuring such contracts.

Moreover, it is conceded that if a sheet means four pages, then Calvert-McBride's bid was the lowest, and

we think it appears from a preponderance of the evidence that, figuring the appellee's bid based on a sixteen page sheet, it is still lower than that of appellants.

In *Arkansas Democrat Co.* v. *Press Printing Co.*, 57 Ark. 322, 21 S. W. 586, it was held that, where the Board of Commissioners let a contract for binding for the various departments of the State Government to one who was not the lowest bidder, and who had not accompanied his bid with a bond, the lowest bidder to whom the contract was not awarded had no rights under the contract entitling him to an injunction to restrain the board from proceeding under the contract as let. But in that case the Press Printing Company brought the action to enforce what it conceived to be a private right, and not in the interest of the public, while in this case the appellants bring the suit in the interest of the public as citizens and taxpayers, as well as to enforce a private right. We are therefore of the opinion that, under the circumstances of this case, this court should not substitute its judgment for that of the Board of Commissioners, even though we might be of the opinion that the board had erred in its judgment in letting the contract, especially so in the absence of any allegation and proof of fraud or demonstrable mistake.

We find no error, and the decree is affirmed.